```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**DON BLANKENSHIP,**

      **Plaintiff,**

v.                                          Civil Action No. 2:19-cv-00589

**THE BOSTON GLOBE MEDIA PARTNERS, LLC**
**(D/B/A THE BOSTON GLOBE), and**
**DOES 1-50 INCLUSIVE,**

      **Defendants.**


<u>MEMORANDUM OPINION AND ORDER</u>

      Pending are the plaintiff's objections to the Magistrate Judge's order granting the defendant's motion to compel, filed on September 15, 2020 (ECF No. 50).

I.    Background

      The plaintiff, Don Blankenship, initiated this action on or about May 20, 2019, in Mingo County circuit court, against the defendant Boston Globe Media Partners, LLC, as well as fifty unnamed defendants. <u>See</u> ECF No. 1-1. The action was later removed to this court. <u>See</u> ECF No. 1. According to the parties' pleadings, on May 22, 2018, the defendant published an article describing the plaintiff as a "convicted felon." ECF No. 1-1 ¶ 64 (internal quotation marks omitted); <u>see</u> ECF No. 3 ¶ 64. The plaintiff alleges this description was false because he is not a

convicted felon, and he therefore asserts claims for defamation and false light invasion of privacy.[1]  See ECF No. 1-1 ¶¶ 6, 10–11, 64, 66–82.

The plaintiff alleges that he "possesses a proven record of adding billions of dollars in value to an enterprise," noting that, as a former executive, he "grew [a] company from a valuation of $150 million to $7.8 billion."  Id. ¶ 25.  He further alleges that the defendant's false statement "so smeared his reputation that he has been prevented from pursuing other businesses and opportunities and generating similar returns of billions of dollars."  Id.  Based on "this harm," the plaintiff "seeks damages," among other relief, id.; see also id. ¶¶ 75, 82, and he states specifically that he seeks "general" and "special damages" for the defamation and false-light claims, id. at 25.

In discovery, the defendant sought the production of the plaintiff's federal and state income tax returns from 2010 to the present.  See ECF No. 28-1 at 14.  The plaintiff objected on multiple grounds, including that the tax returns were not relevant

---

[1] The plaintiff also claims, albeit not in his complaint, that the defendant published a "'correction'" on June 13, 2019, stating that the plaintiff "'was convicted of a misdemeanor for his role in connection with a deadly 2010 mine disaster.'"  ECF No. 37 at 10 (quoting ECF No. 37-1).  He argues that this correction was also false because his misdemeanor conviction was not connected to the disaster to which the correction alludes.  See id. at 10–11. The plaintiff asserts no cause of action based on the alleged falsity of the correction.

to any claim and that their disclosure would not be proportional to the needs of the case. See ECF No. 28-2 at 11.

The parties were unable to resolve their dispute regarding production of the tax returns, and the defendant filed a motion to compel the plaintiff to produce them. See ECF No. 28. The motion was referred to the Magistrate Judge. See ECF No. 2. The defendant argued that the tax returns are relevant to the calculation of damages and proportional to the needs of the case because the parties have no other means of calculating any damages to the plaintiff's income. See EFC No. 28 at 4-5; ECF No. 36. The plaintiff responded that his past tax returns are not relevant to damages and that the defendant had not shown a compelling need for them because the information sought could be obtained through less intrusive means. See ECF No. 37 at 15-19. Specifically, the plaintiff asserted that information related to his income since 2010 could be obtained by requesting production of other financial records, such as his "W-2[] forms, 1099 forms, paystubs, income records, or [similar documents]." Id. at 16. In reply, the defendant asserted that it had requested, in general terms, the production of documents supporting the plaintiff's allegations of damages, which would include the financial records the defendant suggested. See ECF No. 38 at 4-5. Further, on July 24, 2020, after submitting its reply brief, the defendant served a second request for production seeking specifically the plaintiff's

3

paystubs, W-2 forms, 1099 forms, and similar financial records. See ECF No. 41; ECF No. 42-1 at 6.

In light of the defendant's second request for production, the plaintiff asked the Magistrate Judge to defer ruling on the motion to compel until he could produce the requested documents and thereby allow the defendant to determine whether it would still seek production of the tax returns. See ECF No. 42 at 1. By an August 10, 2020 order, the Magistrate Judge agreed, giving the defendant until August 24, 2020, and additional time if the parties so stipulated, to respond to the new discovery request and directing the defendant to advise the court by August 31, 2020, whether the plaintiff's response to the request obviated the need for the motion to compel. See ECF No. 43.

On August 31, 2020, the defendant advised the Magistrate Judge by letter that the plaintiff had served his response to its second request for production. See ECF No. 46; ECF No. 47. The defendant's letter included the plaintiff's August 24, 2020 response to the request, which stated that the plaintiff "will produce any and all non-privileged documents in his custody or control which are responsive to this request, with the exception of documents relating to investment income." ECF No. 47 at 6. However, as the defendant advised the Magistrate Judge, the

4

plaintiff had not provided any of the requested documents by August 31, 2020. See id. at 2.

The defendant's letter also included an August 28, 2020 email from the plaintiff's counsel to the defendant's counsel. See id. at 11. In the email, the plaintiff's counsel "confirm[s]" that, "[p]ursuant to [a previous] telephone discussion" with the defendant's counsel," the plaintiff "is in the process of accumulating the responsive financial documents for production" but notes that "the process will not be completed" by August 31, 2020. Id. The plaintiff's counsel states that he "anticipated that [h]e can begin a rolling production of the responsive financial documents early [the] next week and complete production within a couple of weeks." Id.

On September 1, 2020, the Magistrate Judge granted the defendant's motion to compel. See ECF No. 49. The Magistrate Judge concluded that the production of tax returns, though generally disfavored, may be compelled if they are relevant and if they are needed because the relevant information is not available from other sources and that, in applying this test, the requesting party bears the burden to show they are relevant while the responding party bears the burden to identify an alternative source for the information. See id. at 6 (quoting King v. Chipotle Servs., LLC, No. 3:17-cv-00804, 2017 WL 3193655, at *2

(S.D.W. Va. July 27, 2017)). Applying this test, the Magistrate Judge found that the defendant had satisfied its burden to show that the plaintiff's tax returns contained "clearly relevant" information regarding the damages he alleges in his complaint. Id. at 8. The Magistrate Judge found that the plaintiff had not met his burden to identify an alternative source for the information. See id. at 7-8. In this regard, the Magistrate Judge emphasized that the defendant had failed to produce the alternative documents it had suggested by the August 24, 2020 deadline set by the Magistrate Judge's previous order. See id. at 6-7. The plaintiff's delay in producing the alternative documents, the Magistrate Judge concluded, prevented the defendant from obtaining those documents, which, in turn, precluded the plaintiff from relying on those documents as alternative sources of information that obviated the need to produce the tax returns. See id. at 8.[2]

On September 2, 2020, the day after the order granting the defendant's motion to compel the production of the tax returns had been entered, the plaintiff produced the alternative financial records and so advised the Magistrate Judge. See ECF No. 50-2 at 10. On September 15, 2020, the plaintiff timely filed objections

---

[2] The Magistrate Judge stayed his order granting the defendant's motion to compel pending the court's resolution of any timely-filed objections. See ECF No. 49 at 8-9.

to the Magistrate Judge's order See EFC No. 50. The objections have been fully briefed, and the matter is ready for disposition.

## II. Legal Standard

When a magistrate judge rules on a non-dispositive pretrial matter, a party may object to that ruling within fourteen days after being served with the decision. See Fed. R. Civ. P. 72(a); see also 28 U.S.C. § 636(b)(1)(A). If a timely objection is made, the district court will modify or set aside the magistrate judge's ruling only if it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); see Marks v. Global Mortg. Grp., Inc., 218 F.R.D. 492, 495 (S.D.W. Va. 2003).

"The 'clearly erroneous' standard applies to factual findings, while legal conclusions will be rejected if they are 'contrary to law.'" Sky Angel U.S., LLC v. Discovery Commc'ns, LLC, 28 F. Supp. 3d 465, 479 (D. Md. 2014). A finding is "'clearly erroneous' only if the district court is left with a definite and firm conviction that a mistake has been made." Marks, 218 F.R.D. at 495 (citing Clark v. Milam, 155 F.R.D. 546, 547 (S.D.W. Va. 1994)). "Although the 'contrary to law' standard permits plenary review of legal conclusions, decisions related to discovery disputes and scheduling are accorded greater deference." Stonecrest Partners, LLC v. Bank of Hampton Roads, 770 F. Supp. 2d 778, 782 (E.D.N.C. 2011) (internal citation omitted) (citing,

inter alia, In re Outsidewall Tire Litig., 267 F.R.D. 466, 470 (E.D. Va. 2010)). In light of the discretion given to a magistrate judge in the resolution of nondispositive discovery disputes, the court should only overrule a magistrate judge's determination if this discretion is abused. Patrick v. PHH Mortg. Corp., 298 F.R.D. 333, 336 (N.D.W Va. 2014).

### III. Discussion

In ruling on the defendant's motion to compel, the Magistrate Judge noted that the production of tax returns is disfavored and employed a two-part test to determine whether they should be produced here. See ECF No. 49 at 6 (quoting King, 2017 WL 3193655, at *2). First, the information in the returns must be relevant, and the party requesting the returns bears the burden of demonstrating relevance. See id. Second, the information must be needed because it is not available from an alternative, less-intrusive source, and the party opposing disclosure bears the burden of identifying an available alternative source. See id. The plaintiff agrees that this is the correct test, see ECF No. 50 at 9-11, and the court perceives no clear error in employing it. The court will thus assess its application by the Magistrate Judge.

A.   Relevance

The plaintiff argues that the information contained in his tax returns should be separated into two categories: (1) earned income, such as wages or salary earned from labor, and (2) investment income, such as interest, dividends, capital gains, or distributions attained from an investment. See id. at 4-5, 11-14; see also ECF No. 37 at 14-15; ECF No. 42 at 6.  He asserts that the Magistrate Judge erred by finding that both categories of income are relevant to the calculation of damages.

1.   *Earned income*

The Magistrate Judge's ruling that information related to the plaintiff's earned income contained in his tax returns is relevant is not clearly erroneous or contrary to law.  As he did before the Magistrate Judge, see ECF No. 37 at 14; ECF No. 42 at 6, the plaintiff first argues that such information in his tax returns is irrelevant because his tax returns only list the income he in fact earned and do not list income he could have earned but for the defendant's allegedly false statement, see ECF No. 50 at 11-12.

The court is not persuaded by this argument.  The plaintiff's complaint seeks special damages, i.e., "actual monetary loss that may have been suffered" as a result of the

9

allegedly false statement. Rohrbaugh v. Wal-Mart Stores, Inc., 572 S.E.2d 881, 888 n.18 (W. Va. 2002).[3] Although the complaint does not clearly explain the nature of the special damages sought, the plaintiff asserts in his briefing that it includes monetary loss arising from "the impairment of [his] earning capacity," meaning the "loss of income from lost employment and business opportunities." ECF No. 50 at 8.

A typical method of proving economic damages arising from lost opportunity is to present evidence of the plaintiff's financial condition after the alleged harmful conduct occurred (i.e., in which the opportunity was lost) and evidence of what his financial condition would be in a counterfactual or hypothetical scenario in which the alleged harmful conduct did not occur (i.e., in which the opportunity was not lost). See e.g., Cook v. Cook, 607 S.E.2d 459, 466–67 (W. Va. 2004) (citing 2 Dan Dobbs, Law of

---

[3] Although a plaintiff alleging defamation per se is not obligated to prove damages in order to pursue the cause of action, see Blankenship v. Napolitano, 451 F. Supp. 3d 596, 616–17 (S.D.W. Va. 2020); Denoff v. Fama, 135 S.E. 578, 581 (W. Va. 1926), the parties may still present evidence regarding damages to the trier of fact, see Workman v. Kroger Ltd. P'ship I, No. 5:06-cv-00446, 2007 WL 2984698, at *8 n.8 (S.D.W. Va. Oct. 11, 2007) ("[B]ecause this is a defamation per se case, the jury's . . . task would be to decide not whether there are damages, but what the amount is."); Restatement (Second) of Torts § 622 cmt. a (1977) ("In case of [per se] liability . . . , the plaintiff's damages are merely enhanced by proof that the defamatory publication has caused him a particular loss of the general type usually incident to a defamatory publication."); cf. Denoff, 135 S.E. at 581 (suggesting that evidence of damages may be presented to a jury in a case involving defamation per se).

Remedies § 8.1(2) (2d ed. 1993)). Tax returns for years after the alleged harmful conduct occurred can provide evidence of the plaintiff's financial condition in light of the alleged injury, while tax returns for years before the alleged harmful conduct occurred can provide evidence of the counterfactual scenario, as a factfinder may extrapolate from them what the plaintiff's financial condition would have been if the harmful conduct had not occurred. See Alberts v. Wheeling Jesuit Univ., No. 5:09-cv-109, 2010 WL 1539852, at *11 (N.D.W. Va. Apr. 19, 2010) (concluding tax returns were relevant to issue of damages for loss of employment options).

Here, the Magistrate Judge determined that the plaintiff's tax returns "[c]learly" would "demonstrate the damages" the plaintiff asserted, namely, that he was "prevented from pursuing other business opportunities and generating [large] returns" for a business in his "profession" as a corporate executive. ECF No. 49 at 7–8. The court concludes that this determination was neither clearly erroneous nor an abuse of the discretion accorded to the Magistrate Judge in resolving a non-dispositive discovery dispute.

Next, the plaintiff argues that information regarding his earned income in his tax returns from certain years are irrelevant for various reasons. For instance, he appears to argue

11

that his 2010 and 2011 returns are immaterial because he resigned from his position as an executive in 2010 and received a "lucrative cash payment" from his former employer in 2011; that his returns for 2010 through 2014 are irrelevant because they are too "remote[] in time" from the issues alleged in the complaint; and that his returns for 2014 through 2018 are irrelevant because he was either being prosecuted, incarcerated, or campaigning for political office during those years. ECF No. 50 at 4.

The plaintiff did not raise any of these arguments before the Magistrate Judge, and the court need not consider them. See Courtland Co., Inc. v. Union Carbide Corp., No. 2:19-cv-00894, 2021 WL 1320714, at * 5 (S.D.W. Va. Apr. 8, 2021) ("Generally, a magistrate judge's ruling on a non-dispositive issue should not be disturbed based on arguments not presented to him" (citing Baird v. CCDC/CCSCC, No. 2:08-00044, 2008 WL 4999252, at *2 (S.D.W. Va. Nov. 20, 2008)); see also Jesselson v. Outlet Assocs. of Williamsburg, Ltd. P'ship, 784 F. Supp. 1223, 1228 (E.D. Va. 1991). In any event, the court concludes that the Magistrate Judge did not clearly err in determining that the tax returns remain relevant for purposes of discovery.

2. *Investment income*

The plaintiff argues that the Magistrate Judge erred in finding that information regarding his investment income contained

12

in his tax returns was relevant. He first asserts that such information is irrelevant because his complaint does not allege that the defendant's statement had any affect on his investment income, see ECF No. 50 at 5, 12-13, and that "such a theory" of liability would "def[y] logic," id. at 13.

Contrary to the plaintiff's assertions, however, because his complaint does not clearly describe the nature of the alleged damages, it could be understood to include allegations that the defendant's false statement negatively affected his investment income. See ECF No. 1-1 ¶ 25 (stating that the plaintiff "seeks damages" for "th[e] harm" of being "prevented from pursuing other business and opportunities"); id. ¶ 70 (alleging that the defendant's allegedly false statement "affect[ed] [the plaintiff's] business, trade, profession, and/or office"). Indeed, it appears the Magistrate Judge understood the plaintiff's complaint to allege just that. See ECF No. 49 at 7–8. Further, it would not "def[y] logic," ECF No. 50 at 13, for a defamatory statement to affect the plaintiff's investment income: If the statement resulted in a loss of earned income, it may in turn result in a loss of investment income to the extent the plaintiff invested his earnings.

However, the court need not determine whether the investment income reflected in the plaintiff's tax returns are

13

relevant to the allegations of the complaint because the plaintiff has averred that he "does not and will not claim that <u>any</u> misconduct by the [defendant] had <u>any</u> [a]ffect on his ability to invest in financial instruments[,] [n]or does [he] or will [he] claim that the performance of <u>any</u> such investments was affected in <u>any</u> way by the [defendant]'s [alleged] misconduct." <u>Id.</u> at 5 (emphasis added); <u>see also</u> <u>id.</u> at 12–13 ("[The p]laintiff does not and will not claim in this lawsuit that the [defendant]'s [allegedly] defamatory publication had or in the future will have any effect on his ability to acquire financial instruments. Nor does [the p]laintiff claim in this lawsuit that any misconduct by the [defendant] had or will hereafter have any [a]ffect on the financial performance of the financial instruments acquired by [the p]laintiff . . . ."); <u>id.</u> ("[The p]laintiff does not and will not claim that the [defendant]'s [allegedly] defamatory statements impacted his post-defamation investment income."). In the court's view, the plaintiff's statements constitute a binding judicial admission that he cannot prove that the defendant's allegedly false statement affected his investments in any way and that therefore he will not attempt in any way to prove damages relating to his investment income or to otherwise litigate the issue. <u>See</u> <u>Everett v. Pitt Cnty. Bd. of Educ.</u>, 788 F.3d 132, 141 (4th Cir. 2015) (discussing judicial admissions).

14

In light of the plaintiff's binding admission, the court fails to see how information related to investment income contained in his tax returns is relevant. Such information appears to be pertinent only to calculating special damages arising from the affect that the defendant's allegedly false statement had on the plaintiff's investment income. But, given the plaintiff's admission, any affect the statement might have had on his investment income is no longer relevant in this matter.

The plaintiff made similar admissions before the Magistrate Judge. See ECF No. 37 at 11 ("[The plaintiff] does not claim . . . that any damage done to him by [the defendant]'s [allegedly] defamatory statements had any impact on his investment income capacity."); id. at 14 ("[The p]laintiff does not claim that the [defendant]'s [allegedly] defamatory statements impacted his investments in a way to affect any earnings or losses one way or another."). However, the Magistrate Judge's order did not consider whether these admissions rendered information regarding the plaintiff's investment income irrelevant; instead, noting the vague language regarding damages in the plaintiff's complaint, the order treated information concerning both earned and investment income together. See ECF No. 49 at 7-8. Because the court has concluded that information related to the plaintiff's investment income in his tax returns is not relevant in light of the plaintiff's binding judicial admissions, the court sustains the

plaintiff's objections to the Magistrate Judge's order to the extent the order compelled the production of such information.

### 3. Alternative sources

The plaintiff argues that the Magistrate Judge erred in finding that the information regarding his earned income contained in his tax returns was needed because he failed to identify an available alternative source for the information. The Magistrate Judge found that the alternative sources the plaintiff had suggested, i.e., his W-2 forms, K-1 forms, and similar financial records, were not available for purposes of discovery because the plaintiff had continued to object to their production and had failed to produce them by the August 24, 2020 deadline set by the Magistrate Judge's previous order. See ECF No. 49 at 7-8. In his objections, the plaintiff challenges this finding on the ground that he timely produced the alternative financial records. See ECF No. 50 at 7-9, 12. He points out that, on August 24, 2020, he agreed to produce the financial records, though he maintained objections to doing so. See ECF No. 46 at 6. He also points to evidence, including his counsel's affidavit and emails between the parties' counsel, that the parties had reached an agreement for the plaintiff to begin a rolling production of the financial records soon after August 31, 2020. See ECF No. 50-2. He further notes that the Magistrate Judge's order setting a deadline for the

16

production permitted the parties to stipulate to an extension of the deadline. <u>See</u> ECF No. 43 at 1-2. Because, the plaintiff argues, the production was timely, the Magistrate Judge had no basis to find that the alternative financial records the plaintiff had identified were not available.

The court is not persuaded by this argument. The Magistrate Judge's previous order set August 24, 2020, as the deadline for the plaintiff to produce the financial records, and the plaintiff does not dispute that he failed to produce the financial records by that date or that he objected to production. The plaintiff's evidence fails to demonstrate that the parties stipulated to an extension of the deadline, <u>see</u> LR Civ P 11.2 ("Unless otherwise ordered, stipulations under the Federal Rules of Civil Procedure and these Local Rules of Civil Procedure must be in writing, signed by the parties making them or their counsel, and promptly filed with the clerk."), or that the Magistrate Judge clearly erred in finding that he had failed to timely produce the financial records.

Notably, the plaintiff, in an emailed letter, raised the same arguments regarding an agreement with opposing counsel before the Magistrate Judge. <u>See</u> ECF No. 50-2 at 7-8 (raising arguments regarding agreement); ECF No. 49 at 2–3 (noting receipt of letter). In the letter, plaintiff's counsel acknowledged that he

had "fail[ed] to strictly comply with the discovery deadline." ECF No. 50-2 at 8. Further, in an email to the Magistrate Judge sent the day after the motion to compel had been granted, the plaintiff's counsel again expressly "acknowledge[d]" that the plaintiff had "fail[ed] to timely serve the responsive documents." Id. at 10. The Magistrate Judge's finding that the plaintiff failed to timely produce the alternative financial records is not clearly erroneous.

Aside from the timeliness issue, the plaintiff does not appear to argue that the Magistrate Judge otherwise erred in finding that he had failed to identify an available alternative source of the relevant information the defendant sought. See Myers v. Reason, No. 5:05CV134, 2007 WL 81891, at *3 (N.D.W. Va. Jan. 8, 2007) ("Failure to present objections to a magistrate judge on a non-dispositive ruling waives the right to raise those objections on appeal to the district court."). In any event, the court concludes that, under these circumstances, such a finding would not amount to clear error. Accordingly, the plaintiff presents no persuasive basis for concluding that the Magistrate Judge's determination that the relevant information contained in the plaintiff's tax returns was needed was clearly erroneous or contrary to law.

Because the Magistrate Judge's determination that the information regarding the plaintiff's earned income in his tax returns was relevant and needed was not clearly erroneous or contrary to law, the court overrules the plaintiff's objection to the Magistrate Judge's order compelling the production of that information.

IV. Conclusion

For the foregoing reasons, it is ORDERED that the plaintiff's objections to the Magistrate Judge's order granting the defendant's motion to compel (ECF No. 50) be, and hereby they are, sustained in part and overruled in part. It is further ORDERED that the Magistrate Judge's order (ECF No. 49) is modified to the extent that the portion of it ordering the plaintiff to produce information related to investment income contained in his tax returns is set aside and vacated, and it is otherwise accepted and affirmed.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER: June 8, 2021

John T. Copenhaver, Jr.
Senior United States District Judge