UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

DON BLANKENSHIP,

      Plaintiff,

v.                       Civil Action No. 2:19-cv-00589

BOSTON GLOBE MEDIA PARTNERS, LLC
(d/b/a THE BOSTON GLOBE), and
DOES 1-50 INCLUSIVE,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Pending are Defendant Boston Globe Media Partners, LLC's (the "Boston Globe") objections and motion to strike Plaintiff Don Blankenship's supplemental disclosures (ECF 72), filed May 24, 2021, and the Boston Globe's motion for summary judgment (ECF 76), filed July 13, 2021. On July 27, 2021, Mr. Blankenship responded in opposition (ECF 78) to the motion for summary judgment, to which the Boston Globe replied (ECF 79) on August 3, 2021.

## I.  Background

On May 20, 2019, Mr. Blankenship instituted this action against the Boston Globe and fifty unnamed "Doe"

defendants[1] in the Circuit Court of Mingo County, asserting claims of defamation and false light invasion of privacy.[2]  See ECF 1-1.  On August 12, 2019, the action was removed to this court based on diversity jurisdiction.  See ECF 1; 28 U.S.C. § 1332.  The complaint alleges the following.

A.   General Allegations

          After an explosion in a West Virginia mine resulted in the deaths of twenty-nine miners, the United States Government initiated an investigation into the cause of the explosion, focusing on Massey Energy, which operated the mine, and Mr. Blankenship, who was Massey's chief executive officer.  See ECF 1-1 ¶¶ 7-8, 35-38.  While Mr. Blankenship was not charged with the miners' deaths, the Government later charged him with three felonies, as well as one misdemeanor for conspiracy to violate federal mine safety laws.  See id. ¶ 41.  On December 3, 2015, a

----

[1] The court has dismissed the fifty "Doe" defendants from this action this same date given Mr. Blankenship's failure to properly identify them after the close of discovery.

[2] The claims asserted herein are nearly identical to those Mr. Blankenship brings in two related actions pending before the court: Blankenship v. Fox News Network, LLC, et al., No. 2:19-cv-00236 (S.D.W. Va.) and Blankenship v. NBCUniversal, LLC, et al., No. 2:20-cv-00278 (S.D.W. Va.).  The Boston Globe was initially named as a defendant in the Fox News action.  See ECF 77 at 9 n.6; see also Fox News ECF 1-1.  It was dropped as a defendant therein, however, when Mr. Blankenship amended his complaint.  See Fox News ECF 14.

jury acquitted Mr. Blankenship of the felony charges but found him guilty of the misdemeanor offense.  See id. ¶ 43.  As a result, Mr. Blankenship was sentenced to one year in prison and was released in the spring of 2017.  See id. ¶ 44.

In January 2018, Mr. Blankenship announced his campaign to run as a Republican for a United States Senate seat in West Virginia.  See id. ¶ 46.  Mr. Blankenship lost his bid for the Republican party's nomination in the primary election on May 8, 2018.  See id. ¶ 62.  Mr. Blankenship alleges that media coverage was responsible for his loss due to defamatory statements referring to him as a "felon" or "convicted felon," despite that he was acquitted of the felony charges and was only convicted of the misdemeanor offense.  See id. ¶¶ 52-59.  Mr. Blankenship alleges that these defamatory statements injured his reputation, prevented him from pursuing other business opportunities, and caused him to lose the primary election.  See id. ¶¶ 25, 62.

B.  Allegations Against the Boston Globe

The Boston Globe, a Delaware limited liability company, is the publisher of The Boston Globe newspaper.  See id. ¶ 32; see also ECF 77 at 5.  The Boston Globe newspaper "is a regional newspaper published in the Boston, Massachusetts area."  ECF 77 at 5; ECF 77-1 ¶ 2.  "For several years, page two

3

of the [Boston] Globe newspaper has been published under the banner 'The Nation,' usually with the subheading of 'Daily Briefing' over some of the articles on the page."  ECF 77-1 ¶ 4. The Nation page of the newspaper consists of news from other parts of the country populated by wire service articles from the Associated Press, The New York Times, and the Washington Post for Boston Globe readers who primarily reside in the New England states.  Id.

On May 22, 2018, two weeks after the primary election, the Boston Globe published an edited version of an Associated Press ("AP")[3] article under the headline "W.Va. primary loser makes bid to try again."  See ECF 77-2 at 3.  The original, unedited version of the AP article, authored by John Ruby, described Mr. Blankenship as a "convicted ex-coal baron" who had "spent a year in federal prison for violating safety regulations in a 2010 mine explosion that killed 29 miners."  ECF 77-4 at 2, 4.  Before the AP article was republished by the Boston Globe, the article was edited by Daniel Coleman, a layout and copy editor for the Boston Globe, to change "convicted ex-coal baron"

---

[3] The Boston Globe and the AP had an agreement providing the Boston Globe with the right to access, edit, and publish AP articles in its newspaper and online operation.  See ECF 77-9 at 24-25.

to "convicted felon and former coal baron." [4]  <u>See</u> ECF 77-9 at

71.  The first paragraph of the edited article published in the

May 22, 2018, edition of the Boston Globe newspaper thus read:

> Despite losing the Republican primary in a distant
> third place, <u>convicted</u> <u>felon</u> and former coal baron Don
> Blankenship announced Monday that he will continue his
> bid for U.S. Senate as a third-party candidate, though
> it's unclear if the move violates West Virginia's
> 'sore loser' law.

ECF 77-2 at 3 (emphasis added); <u>see</u> <u>also</u> ECF 1-1 ¶ 24.  On June

14, 2019, after this case was filed in state court on May 20,

2019, the Boston Globe published the following correction to the

article:

> Because of an editing error, a May 22, 2018, story
> about former coal executive Don Blankenship of West
> Virginia referred incorrectly to his criminal case.
> He was convicted of a misdemeanor for his role in
> connection with a deadly 2010 mine disaster.  The
> Globe regrets the error.[5]

---

[4] Although the Boston Globe's IT staff found that three
individuals had "touched the story" as it progressed through the
editing process, the IT staff was able to specifically identify
that it was Mr. Coleman who made the change at issue.  <u>See</u> ECF
77-9 at 70-71.

[5] Mr. Blankenship contends in his briefing, albeit not in
his complaint, that this correction was also defamatory and
"considerably more offensive than referring to [him] as a
'convicted felon'".  ECF 78 at 11.  As noted by the court in a
prior opinion, Mr. Blankenship "asserts no cause of action based
on the alleged falsity of the correction."  ECF 73 at 2 n.1.
Accordingly, the court declines to entertain this contention
herein.

ECF 77-12.[6]  The convicted felon reference in the May 22, 2018,
article forms the basis of Mr. Blankenship's claims against the
Boston Globe for defamation and false light invasion of privacy.

On May 24, 2021, the Boston Globe moved to strike Mr.
Blankenship's supplemental Rule 26(a)(1) disclosures as
untimely.[7]  <u>See</u> ECF 72.  Thereafter, on July 13, 2021, the Boston
Globe moved for summary judgment.  <u>See</u> ECF 76.  The court will
first address the motion for summary judgment before turning to
the motion to strike.

## II.  Governing Standard

Summary judgment is appropriate "if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).  A fact is "material" if it "might affect the
outcome of the suit under the governing law."  <u>Anderson v.</u>
<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute is
"genuine" if "the evidence is such that a reasonable jury could

---

[6] In its briefing, the Boston Globe appears to note that it
was unaware of its error prior to March of 2019, when Mr.
Blankenship filed his complaint in the <u>Fox News</u> action, in which
the Boston Globe was initially named as a defendant.  <u>See</u> ECF 77
at 9.

[7] Mr. Blankenship did not respond to the motion to strike.

return a verdict for the nonmoving party." <u>Id.</u>  In deciding a motion for summary judgment, the court must view the evidence and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party.  <u>See</u> <u>Tolan v. Cotton</u>, 572 U.S. 650, 651, 657 (2014) (per curiam).

III.  Discussion

The Boston Globe contends summary judgment is warranted inasmuch as (1) the court lacks personal jurisdiction over it, and (2) Mr. Blankenship has failed to produce clear and convincing evidence supporting his claims.  Mr. Blankenship responds that the Boston Globe waived its personal jurisdiction defense given its failure to seasonably assert the same and that he has produced sufficient evidence supporting his claims.  The court will address these contentions in turn.

A.  <u>Personal Jurisdiction and Waiver</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a personal jurisdiction challenge is an affirmative defense that must be raised by the defendant.  <u>See</u> <u>Grayson v. Anderson</u>, 816 F.3d 262, 267 (4th Cir. 2016).  The personal jurisdiction defense can be waived, however, if it is not timely asserted.  Fed. R. Civ. P. 12(h)(1).  Indeed, a party waives the defense if

it fails to raise the same at the time it files a Rule 12 motion or in its answer, whichever is first.  **Id.**; **see also Convergence Techs. (USA), LLC v. Microloops Corp.**, 711 F. Supp. 2d 626, 632 (E.D. Va. 2010) (explaining "it is well-established that objections to personal jurisdiction must be raised at the time the first significant defensive move is made – whether it be by way of a Rule 12 motion or in a responsive pleading.") (internal citations omitted).

"Rule 12(h), however, 'sets only the outer limits of waiver; it does not preclude waiver by implication.'" **Hager v. Graham**, No. 5:05-CV-129, 2010 WL 753242, *1 (N.D. W.Va. March 2, 2010) (quoting **Yeldell v. Tutt**, 913 F.2d 533, 539 (8th Cir. 1990)).  In some circumstances a defendant's conduct "may amount to a legal submission to the jurisdiction of the court, whether voluntary or not." **ABC Phones of N. Carolina, Inc. v. Yahyavi**, No. 5:20-CV-0090-BR, 2020 WL 4208923, *3 (E.D.N.C. July 22, 2020) (internal citations omitted).  For instance, "a party can be held to have waived a defense listed in Rule 12(h)(1) through conduct, such as extensive participation in the discovery process or other aspects of the litigation of the case even if the literal requirements of Rule 12(h)(1) have been met."  5C Charles A. Wright & Arthur R. Miller, **Federal Practice & Procedure** § 1391 (3d ed.) (updated Apr. 2020)); **see also Hager**,

2010 WL 753242 at *1 (noting "[a]s a privilege, the personal jurisdiction defense may be waived 'by failure [to] assert [it] seasonably, by formal submission in a cause, or by submission through conduct.'") (quoting <u>Neirbo Co. v. Bethlehem Shipbuilding Corp.</u>, 308 U.S. 165, 168 (1939)); <u>U.S. to Use of Combustion Sys. Sales, Inc. v. Eastern Metal Prod. & Fabricators, Inc.</u>, 112 F.R.D. 685, 687 (M.D.N.C. 1986) (noting that waiver of the personal jurisdiction defense "has been inferred in a wide variety of situations, even when the defense has been formally raised in an answer, by conduct and inaction, such as entering an appearance, filing motions and requesting relief, or participating in hearings or discovery."); <u>Continental Bank, N.A. v. Meyer</u>, 10 F.3d 1293, 1297 (7th Cir. 1993) (concluding that the defendants' active participation in the litigation for two-and-a-half years by participating in discovery and motions practice constituted a waiver of the personal jurisdiction defense.).

With that being said, "[t]here is no bright line rule when determining whether waiver by conduct is appropriate; indeed, it is 'more [an] art than a science.'" <u>Edwards v. Clinical Solutions</u>, No. 9:19-cv-02872-HMH-MHC, 2020 WL 7249906, *3 (D.S.C. Oct. 16, 2020) (quoting <u>Boulger v. Woods</u>, 917 F.3d 471, 477 (6th Cir. 2019)). In determining whether a party has

waived a defense by conduct, courts "consider the degree of participation in the litigation, such as 'entering an appearance, filing motions and requesting relief, or participating in hearings or discovery.'" <u>Id.</u> (quoting <u>ABC Phones of N. Carolina, Inc.</u>, 2020 WL 42089323 at *3).

      The Boston Globe timely raised the defense of personal jurisdiction in its answer, filed August 15, 2019.  <u>See</u> ECF 3 at 12 ¶ 2.[8]  Nonetheless, the court agrees with Mr. Blankenship that the Boston Globe's extensive participation in this litigation for over two years amounts to a waiver of the personal jurisdiction defense.  This is so despite the Boston Globe's literal compliance with Rule 12(h) by raising the defense in its answer inasmuch as the same does "not preserve the defense in perpetuity."  <u>Yeldell</u>, 913 F.2d at 539 (internal citations omitted).  Since first raising the defense over two years ago, the Boston Globe has vigorously partaken in this litigation by (1) participating in the Rule 26(f) planning meeting, (2) jointly submitting a Rule 26(f) report, (3) participating in numerous scheduling conferences with the court, (4) entering

---

[8] The Boston Globe also raised the defense in its notice of removal, filed August 12, 2019.  <u>See</u> ECF 1 at 7 ¶ 19.

into multiple stipulations with Mr. Blankenship, (3) filing two[9] motions to compel certain discovery responses and document production, one of which was fully briefed, ruled upon by the Magistrate Judge, objected to by Mr. Blankenship, and addressed by the court in a nineteen page memorandum opinion, (4) attending two depositions, and (5) engaging in other motions practice, such as filing a motion to strike, all before raising the merits of the defense in its summary judgment motion filed July 13, 2021.

Contrary to the Boston Globe's contention, the court concludes this conduct amounts to an active and extensive participation in this litigation, demonstrating a manifest intent to submit to the court's jurisdiction.  Where, as here, "a party foregoes a Rule 12(b) motion in favor of asserting a jurisdictional defect in its (timely) answer [it] must promptly present that defense for the [c]ourt's consideration."  <u>Branson v. American International Industries</u>, No. 1:15-cv-73, 2016 WL 3190222, *3 (M.D.N.C. June 7, 2016).  Given its over two-year delay, the Boston Globe has failed to promptly present the merits of the defense for the court's consideration.  It has thus forfeited the defense by failing to press the same during

---

[9] The Boston Globe's second motion to compel was later withdrawn after it was fully briefed.  <u>See</u> ECF Nos. 59, 60, 62, 65.

the last two years of this litigation.  Again, while the Boston
Globe may have complied with the literal requirements of Rule
12(h), it "did not comply with the spirit of the rule, which is
'to expedite and simplify proceedings in the Federal Courts.'"
Continental Bank, 10 F.3d at 1297 (quoting Yeldell, 913 F.2d at
539).  Accordingly, the court deems the Boston Globe's personal
jurisdiction defense waived and will proceed to the merits of
Mr. Blankenship's claims.

B.  Defamation

        Defamation is "[a] false written or oral statement
that damages another's reputation."  Pritt v. Republican Nat.
Comm., 557 S.E.2d 853, n.12 (W. Va. 2001) (quoting Black's Law
Dictionary 427 (7th ed. 1999)).

        West Virginia law identifies three types of plaintiffs
in defamation cases: (1) public officials and candidates for
public office, (2) public figures, and (3) private individuals.
See Syl. Pt. 10, Hinerman v. Daily Gazette Co., 423 S.E.2d 560,
564 (W. Va. 1992); see generally Wilson v. Daily Gazette Co.,
588 S.E.2d 197 (W. Va. 2003) (discussing types of public figures
in defamation suits).  The first step in assessing a claim for
defamation is to determine whether the plaintiff is a private
individual or is instead a candidate for public office, a public
official, or a public figure.  See Zsigray v. Langman, 842

12

S.E.2d 716, 722 (W. Va. 2020).  Mr. Blankenship concedes that he qualifies as both a candidate for public office and a public figure.[10]  See ECF 78 at 8; see also Fox News ECF 953 at 14. While the statement at issue herein was published on May 22, 2018, two weeks after the conclusion of the primary election, the court finds that Mr. Blankenship qualified as a candidate for public office through this time given his intention to run as the Constitution Party's candidate for the United States Senate.[11]

       As Mr. Blankenship concedes, his notoriety in the state of West Virginia, his pervasive involvement in the national political arena, and the extensive national media attention he has received as set forth in detail in the court's memorandum opinion and order entered this same date in the Fox News action make clear that he also qualifies as a public

_____

       [10]  Based upon nearly identical allegations in Mr. Blankenship's complaint in the Fox News action, the court determined that he qualifies as a candidate for public office and "may also qualify as a public figure in West Virginia based on his 'prominence and notoriety'".  See Fox News, ECF 398 at 17 (citing State ex rel. Suriano v. Gaughan, 480 S.E.2d 548, 556 (W. Va. 1996)).

       [11] The Supreme Court of Appeals of West Virginia did not reject Mr. Blankenship's attempt to run as the Constitution Party's candidate until August 29, 2018.  See State ex rel. Blankenship v. Warner, 825 S.E.2d 309, 312 n.1 (W. Va. 2018). The court later issued its written opinion detailing its decision on October 5, 2018. Id.

figure.  See Wilson, 588 S.E.2d at 205 (explaining that an
individual's "general fame or notoriety in the state and
pervasive involvement in the affairs of society" renders that
individual an "all-purpose public figure" in a defamation
action.).  Regardless of whether Mr. Blankenship is referred to
as a candidate for public office or public figure, the First
Amendment protections are the same for each.  See Gertz v.
Robert Welch, Inc., 418 U.S. 323, 336 (1974) (noting the test
set forth in New York Times v. Sullivan applies to both
"criticism of 'public figures' as well as 'public officials.'");
see also Monitor Patriot Co. v. Roy, 401 U.S. 265, 271 (1971)
(noting that it "might be preferable to categorize a candidate
for [public office] as a 'public figure,'" as opposed to a
public official, "if for no other reason than to avoid straining
the common meaning of words. But . . . it is abundantly clear
that, whichever term is applied, publications concerning
candidates [for public office] must be accorded at least as much
protection under the First and Fourteenth Amendments as those
concerning occupants of public office.").

     To recover in a defamation action, a plaintiff who
qualifies as a candidate for public office must prove that:

          (1) there was the publication of a defamatory
          statement of fact or a statement in the form of an
          opinion that implied the allegation of undisclosed

> defamatory facts as the basis for the opinion;[12] (2)
> the stated or implied facts were false; and, (3) the
> person who uttered the defamatory statement either
> knew the statement was false or knew that he was
> publishing the statement in reckless disregard of
> whether the statement was false.

Syl. Pt. 5, Chafin v. Gibson, 578 S.E.2d 361, 363 (W. Va. 2003)

(per curiam) (emphasis omitted) (quoting Syl. Pt. 1, Hinerman,

423 S.E.2d at 563); accord Syl. Pt. 7, Pritt, 557 S.E.2d at 855;

see also State ex rel. Suriano, 480 S.E.2d at 561 (setting forth

nearly identical elements in a defamation action involving a

limited purpose public figure).  Further, the West Virginia

Supreme Court of Appeals has also held that, to sustain a

defamation action, a plaintiff who qualifies as a candidate for

---

[12] In its March 31, 2020, memorandum opinion and order in
the Fox News case, the court concluded that the challenged
statements identified in Mr. Blankenship's complaint are capable
of defamatory meaning and may also be considered defamatory per
se because they impute a felony conviction.  See Fox News ECF
398 at 18-20.  To the extent any of the statements could be
considered opinions, the court concluded "they are based on a
'provably false assertion of fact' and thus are not absolutely
protected under the First Amendment."  Id. at 20.  The court
incorporates its previous findings here and concludes that the
challenged statement herein is not only capable of defamatory
meaning but constitutes defamation per se as a matter of law.
The court recognizes that Mr. Blankenship was convicted of a
misdemeanor offense, which amounts to a criminal conviction.
Nonetheless, inasmuch as "a felony conviction carries
significantly greater legal consequences than a misdemeanor
does," the court concludes the per se rule is applicable.  Myers
v. The Telegraph, 332 Ill.App.3d 917, 773 N.E.2d 192, 197 (2002)
(concluding the defamation per se rule should still apply given
the "little, if any, practical difference between falsely
accusing a person of committing a crime and falsely attributing
a felony conviction to a person who pleaded guilty only to a
misdemeanor.").

public office must prove that "the publisher intended to injure the plaintiff through the knowing or reckless publication of the alleged libelous material."  Syl. Pt. 4, Chafin, 578 S.E.2d at 363 (quoting Syl. Pt. 1, Sprouse v. Clay Commc'n Inc., 211 S.E.2d 674, 679 (1975)); accord Syl. Pt. 6, Pritt, 557 S.E.2d at 855; see also State ex rel. Suriano, 480 S.E.2d at 561 (noting a limited purpose public figure must also prove a publisher's intent to injure).  A plaintiff who qualifies as a candidate for public office must prove each of the elements of his claim by clear and convincing evidence.  See Chafin, 578 S.E.2d at 366-67; Pritt, 557 S.E.2d at 862; Hinerman, 423 S.E.2d at 572-73.

The Boston Globe contends Mr. Blankenship's defamation claim fails inasmuch as Mr. Blankenship has failed to produce clear and convincing evidence demonstrating: (1) actual malice; (2) material falsity of the alleged defamatory statements; and (3) an intent to injure.[13]

### 1.  Actual Malice

To satisfy the essential elements of a defamation cause of action, a plaintiff who qualifies as a candidate for public office must prove "actual malice" on the part of the

---

[13] The Boston Globe also contends that Mr. Blankenship has failed to produce evidence of compensable damages.

publisher, that is, that the publisher made the defamatory statement "'with knowledge that the statement was false or with reckless disregard of whether it was false or not.'"  Chafin, 578 S.E.2d at 366 (brackets omitted) (quoting N.Y. Times Co. v. Sullivan, 376 U.S. 254, 280 (1964)).

The actual malice standard derives from the United States Supreme Court's decision in Sullivan and its progeny, which, as recognized by the Supreme Court of Appeals of West Virginia, "placed a [F]irst [A]mendment, free speech gloss upon all prior law of defamation." Havalunch, Inc. v. Mazza, 294 S.E.2d 70, 73 (W. Va. 1983); see id. (noting that First Amendment concerns and concomitant protections provided by the actual malice standard, are at their "strongest" when the statement at issue concerns "a public official or candidate for office because of the need for full, robust, and unfettered public discussion of persons holding or aspiring to offices of public trust."). Thus, "'application of the state law of defamation' is limited . . . by the First Amendment," CACI Premier Tech., Inc. v. Rhodes, 536 F.3d 280, 293 (4th Cir. 2008) (quoting Milkovich v. Loarin Journal Co., 497 U.S. 1, 14 (1990)), and the court applies federal law in assessing the element of actual malice, see Berisha v. Lawson, 973 F.3d 1304, 1314 n.6 (11th Cir. 2020).

"'Actual malice is a subjective standard.'" __Fairfax__ __v. CBS Corp.__, 2 F.4th 286, 293 (4th Cir. 2021) (alteration omitted) (quoting __Reuber v. Food Chem. News, Inc.__, 925 F.2d 703, 714 (4th Cir. 1991) (en banc)).  Thus, "[t]he actual malice standard requires that 'the defendant had a particular, subjective state of mind at the time the statements were made.'" __Id.__ at 295 (quoting __Horne v. WTVR, LLC__, 893 F.3d 201, 211 (4th Cir. 2018)).  Accordingly, "[a] plaintiff must prove that the defendant published the statement despite actually knowing it was false or harboring 'a high degree of awareness of probable falsity.'" __Id.__ at 293 (ellipsis omitted) (quoting __Reuber__, 925 F.2d at 714).  To show reckless disregard for the truth, then, "a plaintiff must prove that 'the defendant in fact entertained serious doubts as to the truth of his publication.'" __Id.__ (quoting __St. Amant v. Thompson__, 390 U.S. 727, 731 (1968)).

A plaintiff who is a candidate for public office bears the heavy burden of proving actual malice by clear and convincing evidence.  __See__ __CACI__, 536 F.3d at 293 (citing __Carr v.__ __Forbes, Inc.__, 259 F.3d 273, 282 (4th Cir. 2001); __see__ __also__ __Carr__, 259 F.3d at 282 (4th Cir. 2001) ("Establishing actual malice is no easy task . . . .").  At the summary judgment stage, the appropriate inquiry for the court is "whether the evidence in the record could support a reasonable jury finding . . . that

18

the plaintiff has shown actual malice by clear and convincing evidence."  <u>Anderson</u>, 477 U.S. at 255-56; <u>see</u> <u>Harte-Hanks</u> <u>Commc'ns v. Connaughton</u>, 491 U.S. 657, 685 (1989) ("The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law.").

Mr. Blankenship avers that the Boston Globe acted with actual malice in publishing the article containing the convicted felon reference inasmuch as it "had a high degree of awareness of the probable falsity" of the challenged statement.  ECF 78 at 11.  In support of this assertion, he first points to three articles wherein the Boston Globe had "previously reported that [he] was convicted of a misdemeanor."  ECF 78 at 3 (citing ECF Nos. 78-5; 78-6; 78-7).  Mr. Blankenship further contends that because "[t]here was no legitimate reason whatsoever for [the] Boston Globe to change the text of the AP article from 'convicted ex-coal baron' to 'convicted felon and former coal baron[,]' . . . [a] reasonable inference could be drawn that the article was changed to generate controversy and readership."  <u>Id.</u>  Additionally, Mr. Blankenship has provided a bulleted list, without any elaboration or citation to the record, by which he contends that the following quoted "actions and omissions" of the Boston Globe serve as "cumulative evidence" that it acted in

reckless disregard for the truth by publishing the edited article:

- accurate text changed to inaccurate text to maximize impact;
- peripherality of the defamatory text in context of the story;
- absence of investigation before publishing the defamatory statement;
- [the] editor's purported lack of memory and credibility;
- extreme departure from professional standards; and
- failure to supervise [the] editor's preparation for the story.

Id.  The court does not agree.  At this stage of the litigation, Mr. Blankenship is obligated to produce affirmative evidence of convincing clarity that the Boston Globe acted with actual malice.  Bare assertions, with no citation to the record, do little to satisfy this heavy burden.  Even assuming Mr. Coleman -- the editor responsible for the challenged statement -- failed to investigate prior to publishing or that his preparation was not adequately supervised, neither allegation constitutes sufficient proof of actual malice.  Indeed, "recklessness 'is not measured by whether a reasonably prudent man would have published or would have investigated before publishing.'" Fairfax, 2 F.4th at 293 (quoting St. Amant, 390 U.S. at 731). Thus, an editor's "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not

sufficient to establish reckless disregard." <u>Harte-Hanks</u>, 491
U.S. at 688.[14]

Mr. Blankenship's reliance on the three previous
Boston Globe articles accurately reporting his conviction is
misplaced inasmuch as Mr. Blankenship has failed to present any
evidence that Mr. Coleman was aware of or involved in the
publication of these articles.  As the court previously
explained in its opinion in <u>Blankenship v. Napolitano</u>, "the
'mere presence' of previous stories in a [media organization's]
files does not establish that the [media organization] knew that
the statement was false 'since the state of mind required for
actual malice would have to be brought home to the persons in
the . . . organization having responsibility for the publication
of the [statement].'"  451 F. Supp. 3d 596, 619 (S.D. W. Va.
2020) (quoting <u>Sullivan</u>, 376 U.S. at 287).  Furthermore, Mr.
Blankenship's assertion that the "convicted ex-coal baron"
language was changed to "convicted felon" to "maximize impact"
and "generate controversy and readership" is nothing more than

---

[14] "[F]ailure to investigate before reporting a third
party's allegations can be reckless 'where there were obvious
reasons to doubt the veracity of the informant or the accuracy
of his reports.'"  <u>Fairfax</u>, 2 F.4th 286 at 293 (quoting <u>Harte-
Hanks</u>, 491 U.S. at 688).  Mr. Blankenship has produced no
evidence that Mr. Coleman actually relied on any information or
sources that should have provided him with obvious reasons to
doubt the accuracy thereof.

sheer speculation and unsupported by the evidentiary record. David Dahl -- the Boston Globe's corporate representative, its Deputy Managing Editor for Print and Operations, and the only Boston Globe individual Mr. Blankenship deposed in this matter[15] -- testified that he believed "what happened here was an honest mistake by an editor looking at a story about a very serious incident and editing an incorrect characterization" into the article. ECF 77-9 at 78. He further testified that he believed "an honest mistake" had been made "in the course of editing the story" and that the Boston Globe "took the mistake seriously and . . . regret[ted] making the error." Id. at 73, 76. Mr. Blankenship has presented no evidence that would call Mr. Dahl's testimony into question. The court also fails to see how Mr.

---

[15] Mr. Blankenship did not depose Mr. Coleman after learning from Mr. Dahl that it had been determined by the Boston Globe's IT staff that Mr. Coleman was the individual who had made the edit to the article at issue. After Mr. Dahl learned that Mr. Coleman was responsible for the error, Mr. Dahl testified that he spoke with Mr. Coleman, who stated that "he did not recall making the change and did not recall the story." ECF 77-9 at 72. Mr. Dahl further testified layout editors, such as Mr. Coleman, "on a given night . . . would edit personally five to ten stories for maybe 20 wire stories[,]" which "[o]ver the course of a year . . . might add up to literally hundreds, if not a thousand or more stories." Id. To the extent Mr. Blankenship avers Mr. Coleman's "lapse of memory" calls his credibility into question, such assertion is insufficient to create a genuine dispute of material fact on the issue of actual malice. See Anderson, 477 U.S. at 256 (explaining that a plaintiff cannot defeat summary judgment "by merely asserting that the jury might, and legally could, disbelieve the defendant's denial of . . . legal malice.").

Blankenship's reliance on the alleged "peripherality of the defamatory text in context of the story" bears any relevance to whether Mr. Coleman published the statement in reckless disregard of the truth.

Finally, Mr. Blankenship's bare assertion that the Boston Globe's "extreme departure from professional standards" amounts to evidence of actual malice fares no better than his previous contentions. Indeed, Mr. Blankenship has failed to identify any "professional standard" that was allegedly violated. Nonetheless, even an "extreme deviation from professional standards" is constitutionally insufficient to establish clear and convincing evidence of actual malice. Harte-Hanks, 491 at 665. In sum, Mr. Blankenship has failed to demonstrate that the Boston Globe, through the actions of Mr. Coleman, acted with actual malice in publishing the article at issue. Accordingly, the Boston Globe is entitled to summary judgment on this basis.[16]

---

[16] Inasmuch as Mr. Blankenship has failed to produce clear and convincing evidence of actual malice, an essential element of his defamation claim, the court need not address the sufficiency of evidence with respect to the remaining elements.

C.   <u>False Light Invasion of Privacy</u>

West Virginia recognizes a legally protected interest in privacy.  <u>Tabata v. Charleston Area Med. Ctr., Inc.</u>, 759 S.E.2d 459, 464 (W. Va. 2014).  "Publicity which unreasonably places another in a false light before the public is an actionable invasion of privacy."  Syl. Pt. 12, <u>Crump v. Beckley Newspapers, Inc.</u>, 320 S.E.2d 70, 74 (W. Va. 1983).  Although the Supreme Court of Appeals of West Virginia has not definitively set forth elements for the cause of action, it appears that, for a plaintiff who qualifies as a candidate for public office to establish a case for a false light invasion of privacy, he must prove that: (1) the defendant gave publicity to a matter concerning the plaintiff that places the plaintiff before the public in a false light, (2) the publicity was widespread, (3) the matter of the publicity was false, (4) the false light in which the plaintiff was placed would be "highly offensive to a reasonable person," and (5) the defendant "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the [plaintiff] would be placed" (i.e., actual malice).  <u>Taylor v. W. Virginia Dep't of Health & Human Res.</u>, 788 S.E.2d 295, 315–16 (W. Va. 2016) (citing Restatement (Second) of Torts § 652E (1977)); <u>see</u> <u>Crump</u>, 320 S.E.2d at 87–88.

Although "false light invasion of privacy is a
distinct theory of recovery entitled to separate consideration
and analysis," claims of false light invasion of privacy are
similar to defamation claims, and courts often treat them in
essentially the same manner as they treat defamation claims.
Crump, 320 S.E.2d at 87.  As the Supreme Court of Appeals of
West Virginia has recognized, the First Amendment-derived actual
malice standard announced in Sullivan applies to claims for
false light invasion of privacy brought by plaintiffs who are
public officials or public figures.  See Crump, 320 S.E.2d at
88-89 (citing Curtis Publ'g Co. v. Butts, 388 U.S. 130 (1967);
Time, Inc. v. Hill, 385 U.S. 374 (1967)).

Thus, to withstand summary judgment on his false light
invasion of privacy claim, the plaintiff, as a matter of federal
constitutional law, must adduce sufficient evidence that could
reasonably support a jury finding of actual malice by clear and
convincing evidence.  See Anderson, 477 U.S. at 255-56; see also
Howard v. Antilla, 294 F.3d 244, 248-49, 252 (1st Cir. 2002)
(requiring actual malice to be proved by clear and convincing
evidence for false light invasion of privacy claim); Solano v.
Playgirl, Inc., 292 F.3d 1078, 1084 (9th Cir. 2002) (same);
Ashby v. Hustler Mag., Inc., 802 F.2d 856, 860 (6th Cir. 1986)
(same); Douglass v. Hustler Mag., Inc., 769 F.2d 1128, 1140 (7th

Cir. 1985) (same); cf. Parson v. Farley, 800 F. App'x 617, 623 (10th Cir. 2020) (affirming jury instructions requiring actual malice to be proved by clear and convincing evidence for false light invasion of privacy claim); Peoples Bank & Tr. Co. of Mountain Home v. Globe Int'l Publ'g, Inc., 978 F.2d 1065, 1067 & n.2 (8th Cir. 1992) (same).

As previously explained in detail above, Mr. Blankenship has failed to produce sufficient evidence that could reasonably support a jury finding of actual malice by clear and convincing evidence.  Accordingly, the Boston Globe is likewise entitled to summary judgment on Mr. Blankenship's cause of action for false light invasion of privacy.[17]

## IV.  Conclusion

Based upon the foregoing discussion, it is ORDERED that the Boston Globe's motion for summary judgment (ECF 76) is GRANTED, the Boston Globe's motion to strike (ECF 72) is DENIED AS MOOT, and this action is DISMISSED.

---

[17] Inasmuch as the Boston Globe is entitled to summary judgment on all of Mr. Blankenship's claims, the court need not address the merits of its pending motion to strike.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER: February 2, 2022

John T. Copenhaver, Jr.
Senior United States District Judge